UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WARRIOR LACROSSE, INC.,

        Plaintiff,

v.

STX, LLC,

        Defendant.

Case number 04-70363
Honorable Julian Abele Cook, Jr.

## ORDER

On June 2, 2005, this Court entered an Order which construed a substantial number of patent claim terms that had been placed in dispute by the Plaintiff, Warrior Lacrosse, Inc. ("Warrior") and the Defendant, STX, LLC ("STX") in this litigation. On June 15, 2005, Warrior filed a motion, seeking to obtain a reconsideration by the Court of its construction of the term, "integral," in Claim 19 of the 6,676,547 patent ("the '547 patent"). In its motion, Warrior asserts that the construction of "integral" by the Court as having been "formed during manufacture of the lacrosse head in a single manufacturing process" is palpably factually and legally defective.[1] For the reasons that are stated below, this Court disagrees with Warrior's argument and, in so doing, will deny its motion for reconsideration.

I.

Warrior's motion for reconsideration is governed by E.D. Mich. L.R. 7.1(g)(3), which reads as follows:

---

[1] On June 23, 2005, STX filed a motion in which it requested the Court for leave to file a brief in opposition to Warrior's motion.

> Generally, without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

In this context, a "palpable defect" is defined as an obvious, clear, unmistakable, manifest, or plain deficiency. WEBSTER'S NEW WORLD DICTIONARY 974 (3rd Ed. 1988); WEBSTER'S NEW WORLD THESAURUS 544 (Rev. Ed. 1985). Utilizing this definition, the claimed defect in the challenged order must be evident to an objective reader and not subject to any reasonable dispute.

## II.

Claim 19 of the '547 patent reads as follows:

> A lacrosse head comprising:
> a pair of opposing sidewall portions each having a top end and a bottom end;
> a base portion extending between and connecting said bottom ends of said pair of opposing sidewall portions; and
> a scoop portion extending between and connecting said top ends of said pair of opposing sidewalls portions;
> wherein at least one of said pair of opposing sidewall portions, said base portion, or said scoop portion has a *integral* raised non-skid textured surface thereon to create friction between said non-skid surface and a lacrosse ball and thereby decrease spin resulting in improved player control.

'547 patent (emphasis added). Following its completion of the *Markman* hearing,[2] the Court, in its evaluation of the ordinary meaning of "integral" as well as the specification and the relevant prosecution history, concluded that this disputed word should be construed to mean as having been "formed during the manufacture of the lacrosse head in a single manufacturing process." Order of June 2, 2005, at 35.

---

[2]This hearing was conducted pursuant to *Markman v. Westview Instr., Inc.,* 517 U.S. 370 (1996).

In its pleading papers, Warrior initially asserts that the Court improperly imported a method limitation into its construction for Claim 19, which it views as an apparatus claim. In support of this argument, Warrior cites *Vanguard Products Corp. v. Parker Hannifin Corp.,* 234 F.3d 1370 (Fed. Cir. 2000), in which the Federal Circuit Court of Appeals reviewed the construction of the term "integral therewith" by the district court in connection with a patent for an electromagnetic interference shielding gasket. The language of this *Vanguard* claim indicated that the gasket was composed of two layers: "a relatively thick elastometric layer of good elasticity and high tear resistance, and a relatively thin elastometric outer layer *integral therewith*, said outer layer being metal filled and providing a high degree of attenuation of electrical energy." *Id*. at 1371 (emphasis added). However, the parties disputed whether the term "integral therewith" required that the gasket be made by a process called "co-extrusion," in which two materials are composed by forcing them together through a set of appropriately positioned forming dies. *Id.* In *Vanguard,* the Defendant, the Parker Hannifin Corporation, asserted that the term "integral therewith" required the use of co-extrusion to manufacture the gasket since (1) it was the only process shown in the specification and (2) the prosecution history showed that the patent inventors viewed co-extrusion as "fundamental" to the manufacture of the gasket. *Id.*

The Federal Circuit disagreed, reasoning that the word, as used in the specification, "was used to describe the product, and not as a designation of a specific manufacturing process." *Id*. at 1372. Furthermore, the Federal Circuit also recognized that the prosecution history had failed to demonstrate that the patent inventors had "expressly disclaimed" the claim scope beyond the products made by co-extrusion. *Id*. In a passage that was cited by Warrior in its pending motion for reconsideration, the Federal Circuit concluded:

3

> The method of manufacture, even when cited as advantageous, does not of itself convert product claims into claims limited to a particular process. We agree with the district court that the word "integral" describes the relationship between the elastometric layers, not the means of joining them. This word did not limit the claim to the manufacturing process set forth in the specification. A novel product is not limited to the process by which it was made.

*Id*.

Contrary to Warrior's argument, the language in *Vanguard* does not control the construction of "integral" in the '547 patent. Here, the specification of the '547 patent clearly distinguishes between those "integral" non-skid surfaces that are created as a result of a single manufacturing process and those non-skid surfaces that are created merely by attaching a plastic strip or by overmolding. The specification reads, in relevant part:

> The nubs 20 preferably are *integral* parts of the scoop portion 16 of the lacrosse head 10, but may be *otherwise as desired*. For example, a strip of plastic having nubs formed thereon may be attached or otherwise adhered to existing scoop portions of lacrosse heads .... Further, the non-skid surfaces can be created by post manufacturing process, such as by overmolding.

'547 patent, col. 4, lines 18-33 (emphasis added). Unlike the patent at issue in *Vanguard*, the word, "integral," in the '547 patent specification not only describes the product, it also designates a "specific manufacturing process." *Vanguard*, 234 F.3d at 1372. As defined by the specification, this term refers to those non-skid surfaces that are created as a result of a single manufacturing process. The specification explicitly refers to overmolding and the attachment of a plastic strip as examples of non-integral surfaces. This explicit distinction between integral and non-integral non-skid surfaces distinguishes this construction of the '547 patent from the patent at issue in *Vanguard*.

It is axiomatic that the interpretive process of claim construction forbids a court from "importing limitations from the specification into the defining language of the claims." *Innovad Inc. v. Microsoft Corp.*, 260 F.3d 1326, 1332 (Fed. Cir. 2001). At the same time, however,

4

"[c]laims must be read in view of the specification, of which they are a part." *Markman,* 52 F.3d at 979- 980. As the Federal Circuit noted in 2001,

> where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.

*SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001). Whereas the claim language of the '547 patent is ambiguous and does not clarify the meaning of "integral," the specification is unambiguous and offers a relevant context for the meaning of the disputed claim term.

Warrior next directs the Court to sections of the prosecution history which it believes support its proposed construction. Warrior cites the following statement from the Patent Examiner, who rejected its initial claim as being unpatentable in light of the Muir patent:

> The use of various means of attachment is well known in the art. No criticality is seen in the type of means used to secure the frictional surface. Muir discloses an overmolding process (fig 1, 1:15-20). It would have been obvious to one of ordinary skill in the art at the time of the invention to have employed any one of several equivalent bonding means to insure the frictional surface was secured during play.

Pl.'s Mot. Reconsideration, Ex. B, STX 0986. Warrior focuses on the Examiner's statement that "[n]o criticality is seen in the type of means used to secure" the non-skid surface. By making this statement, Warrior argues that the Examiner did not intend to distinguish between those non-skid surfaces that were created as a result of a single manufacturing process and those that are created by overmolding or by attaching a plastic strip. Thus, insofar as the prosecution history makes no distinction between the methods by which a non-skid surface is created, Warrior's patent should be construed to incorporate all possible methods, including overmolding. Warrior further posits that this word was added to the claim to indicate that the non-skid frictional surface was "bonded

or similarly intimately secured" to the lacrosse head, not to indicate that a non-skid surface had to be created as a result of a single manufacturing process. Pl.'s Mot. Reconsideration at 3.

Warrior's argument is speculative. There is nothing in the prosecution history which definitely supports its proposed construction for the word, "integral." Although Warrior is correct that the Examiner did not make any distinction between the methods of bonding a non-skid surface with the sidewall, he rejected all such methods in light of Muir and other prior art. The Examiner, while adding "integral" in an amendment following his telephone conference with Warrior's attorney, did not include a statement of the reasons for the inclusion of the word. The Court is reluctant to conclude that the Examiner added the word, "integral," to the patent because he intended to include all methods of attaching non-skid surfaces to the lacrosse head. In the absence of more definitive evidence from the prosecution history, the Court concludes that Warrior has failed to meet its significantly high burden of proving a "palpable defect."

Finally, Warrior claims that the challenged construction is factually defective. As a preliminary matter, Warrior claims that the view of overmolding by the Court as being carried in two separate processes is technically incorrect. In its claim construction order, the Court noted that overmolding "is a form of plastic injection molding whereby a substrate part is formed first, and, in a subsequent molding process, features are molded over, onto or around portions of the substrate part. Typically, the second process molds a softer plastic onto portions on the firmer substrate." Order at 31, n. 10. Although Warrior takes issue with this definition of overmolding, it disregards the fact that this definition was derived from its own pleadings. *See* Pl.'s Claim Constr. Resp. Br. at 28. Under these circumstances, Warrior cannot now disclaim this definition.

Warrior also contends that even overmolding can qualify as a single manufacturing process.

6

However, this assertion is belied by the evidence in the record. In support of its assertion, Warrior cites several pages from the "Injection Molding Handbook." *See* Pl.'s Mot. Reconsideration, Ex. E. Using examples from the handbook, Warrior argues that overmolding in a lacrosse head can be created in two different ways: (1) by making a hard plastic lacrosse head in one mold and then setting it in a second mold where the overmolded material can be applied, or (2) by utilizing a rotating mold or a "core pull" or "core back" mold wherein the final product could be made in two sequential steps in the same mold. Pl.'s Mot. Reconsideration at 6. According to Warrior, each of these methods "involves a 'single manufacturing process' since all of the steps are needed to produce a final commercial product." *Id.*

This argument distorts the essential meaning of the term, "single manufacturing process." Each of the processes, which were described by Warrior, involves sequential steps and does not describe a single manufacturing process. The Court understands "single manufacturing process" as one that does not require sequential steps. Moreover, Warrior's statement that a single manufacturing process is one wherein all of the steps produce a "final commercial product" is not persuasive. As pointed out by STX, overmolding represents an optional feature: a lacrosse head, without overmolding, is a still a lacrosse head that may be sold as a "final commercial product." Def.'s Resp. Br. at 5. Inasmuch as the extrinsic evidence offered by Warrior demonstrates that overmolding does not qualify as a "single manufacturing process," it is not an "integral" non-skid surface as defined by the challenged claim construction order.

### III.

Based on its review of the claim language, specification, prosecution history and the relevant extrinsic evidence, this Court concludes that Warrior has failed to satisfy its burden of

7

demonstrating a palpable defect by which this Court was misled in construing the word, "integral," in the '547 patent. Accordingly, the request by Warrior to modify its construction, as noted above, must be, and is, denied.

IT IS SO ORDERED.


DATED:    July 12, 2005                           s/ Julian Abele Cook, Jr.
          Detroit, Michigan                       JULIAN ABELE COOK, JR.
                                                  United States District Judge



Certificate of Service

I hereby certify that on July 12, 2005, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                                  s/ Kay Alford
                                                  Courtroom Deputy Clerk