UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WARRIOR LACROSSE, INC.,
A Michigan Corporation,

        Plaintiff,

v.                                                                                                           Case Nos. 04-70363 & 04-71842
                                                                                                      Honorable Julian Abele Cook, Jr.

STX, L.L.C., a Maryland Limited
Liability Company,

        Defendants.

ORDER

The issues in this case relate to claims by the Plaintiff, Warrior Lacrosse, Inc. ("Warrior"), who has accused the Defendant, STX L.L.C ("STX") of infringing upon two of its patents; namely, U.S. Patent No. 6,561,932 ("932 Patent") and U.S. Patent RE 38, 216 ("216 Patent"). In its responsive pleadings, STX has denied all of Warrior's claims of infringement. On October 12, 2005, Warrior filed two dispositive motions, both of which are directed to the alleged encroachment activities by STX. In its first motion, Warrior seeks the entry of a partial summary judgment relating to the validity of the "932 Patent." In its second dispositive motion, Warrior seeks to obtain a summary judgment on the issue of the alleged infringement of the 932 Patent by STX.

For the reasons that have been set forth below, both of Warrior's motions will be denied.

I.

Warrior is a Michigan corporation which maintains its principal offices in Warren, Michigan. The primary business of this Company consists of the manufacturing and the sale of

lacrosse equipment, including lacrosse heads, handles, protective equipment, and related accessories. STX maintains its principal place of operations in Baltimore, Maryland, from which it - like its business competitor, Warrior, - sells lacrosse heads, handles, protective equipment, and other related accessories.

According to the Complaint, STX has been, and is, manufacturing and selling its products that unlawfully use trade designations which incorporate various features of Warrior's lacrosse heads. Warrior has identified twenty-three STX lacrosse heads that, in its judgment, encroach upon its protected rights under the "932 Patent."[1] All of the allegations have been denied by STX.

II.

The Supreme Court has opined that "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The language within Federal Rule of Civil Procedure 56© provides that a motion for summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Here, the burden is upon the movant to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56©; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*,

---

[1] Although Warrior claims that some of STX's products infringe upon more than twenty claims of the 932 Patent, it has only focused upon independent Claims 7, 31, and 42 in its motion. Hence, the Court will direct its attention to these three independent claims.

749 F.2d 1205, 1210-11 (6th Cir. 1984). It is not the role of the Court to weigh the facts. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987).  Rather, it is the duty of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Hence, the moving party can show that a genuine factual issue is lacking if it presents evidence which is sufficient to make the issue "so one-sided that [it] must prevail as a matter of law," *id.* at 252, or point to a failure by the non-moving party to present evidence "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.  Upon such a showing, the non-moving party must act affirmatively to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e).  The proffer of a mere scintilla of supporting evidence is insufficient.  *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  Indeed, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

III.

A.   The "932 Patent"

On May 13, 2003, the "932 Patent" was issued to Warrior for an invention entitled "Lacrosse Stick Head."  In general, this Patent, which grants Warrior the exclusive right to make and use lacrosse heads, consists of fifty seven claims and generally pertains to a lacrosse head for mounting on a handle, whereas the head includes a catching area that is larger than the pocket area. It also relates to recessed channels that are formed along the inner portions of the sidewalls to assist

3

in the retention of a lacrosse ball.

The "932 Patent" specification describes the lacrosse heads as having "an open frame with a base that has a concave interior surface, a pair of sidewalls that diverge from the base, and a scoop that interconnects the sidewalls of the base." STX's Mem. in Opp'n to Warrior's Mot. for Summ. J. of Infringement of U.S. Patent No. 6,561,932 at 4. Additionally, "openings carried by the frame are used to secure a lacrosse net around the back side of the frame, leaving the front side open. A throat projects back from the base of the frame, and has an open socket for receiving a handle." *Id.*

B.      STX's Accused Products

Warrior points to eight STX lacrosse heads (Bionic, Deuce, Fuse, GForce, Hype, Liquid, Profile, and Surge) that, in its judgment, infringe upon the "932 Patent." However, STX adopts an opposing view point by asserting that all of these products, which have been challenged by Warrior, qualify as prior art and, thus, are not subject to legally enforceable accusations of infringement.

In the advertisements relating to its "Fuse" lacrosse head, STX notes that this product possesses a "tapered and specifically angled inner elastomer-lined sidewalls guide and direct the ball into the passing, carrying, and shooting sweet spot." This "Fuse" lacrosse head also includes a "pinched opening for vice-like ball retention and control." However, Warrior maintains that this description indicates that the angled sidewalls maintain the catching area of the head while the narrow channel pocket improves ball retention and control.

STX, in its promotional material relating to the "Hype" lacrosse head, describes it as including "bounce back surface angles [to] help retain the ball." Warrior challenges this description, contending that all of the lacrosse heads include the patented features of a catching area

4

that is larger than the pocket area (Claims 7 and 31) and/or a recessed channel formed in a lower portion of the sidewalls to assist in retaining a lacrosse ball within the pocket (Claim 42).

Warrior also asserts that the Bionic, Deuce, GForce, Liquid, Profile, and Surge lacrosse heads feature a similar ball retention channel in the lower portion of the sidewall and/or a larger catching area as compared to the pocket area. STX rejects this argument, pointing out that its expert, Paul Kolada used an optical scanning process to produce digital data which accurately calibrates the geometry of the lacrosse head. This optical scanning process produced data that, when calibrated, has the capacity to record a measurement of up to approximately 0.0007- 0.0001 inches. The data was subsequently collected and used to generate different views and sections of the heads, and to make accurate measurements of the lacrosse head dimensions. Moreover, STX submits that Kolada, after reviewing the structural design limitations within Claims 7, 31, and 42, concluded that none of Warrior's claims had been infringed.

## IV.

Typically, an issued patent is presumed valid. 35 U.S.C. § 282 (2006). In order to prove that a claimed invention is invalid, a defendant must prove that the claimed invention and the prior art are identical by clear and convincing evidence. *Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1316 (Fed. Cir. 2005); *Scripps Clinic & Research Foundation v. Genetech,* 927 F.2d 1565, 1576 (Fed. Cir. 1991). In order to establish a device as prior art, a defendant must prove that it pre-dates the patent. *See* 35 U.S.C. § 102 (2006). Additionally, the controverted specimen must also be "in public use or on sale in this country . . . more than one year prior to the date of the application for patent in the United States . . . ." 35 U.S.C. 102(b) (2006).

Thus, the issue that must be addressed in connection with these two motions is whether the "932 Patent" is prior art. According to STX, it is prior art. However, Warrior disagrees, contending that STX has failed to provide any evidence which supports its position on this narrow, but important, issue.

Warrior contends that STX has (1) failed to establish a date of manufacture, sale, or use for any of the challenged lacrosse heads, (2) been unsuccessful in demonstrating the authenticity of these lacrosse heads, and (3) not shown that the lacrosse heads were in public use or were on sale at least one year prior to the date of the filing of the "932 Patent."

The critical date regarding the "932 Patent" for the purpose of assessing the merit of these motions is May 21, 2000.[2] Since its inception, STX maintains that it has conducted its business operations from three different locations within the Baltimore area, with its archived lacrosse heads being stored and locked in a specific area. According to STX, these archived lacrosse heads constitute a collection of its own commercial lacrosse heads and those of its competitors,[3] none of which have modified in any way.[4] STX also submits that the manufacture of most, if not all of

---

[2] The "932 Patent" application was filed on May 21, 2001.

[3] David Emala, vice president, secretary, and general counsel of STX maintains that, since he joined the Company in 1993, he has been responsible for the collection and storage of its competitors' lacrosse heads. Additionally, he submits that some of these lacrosse heads were the subject of prior litigation involving STX in 1991-92, which ostensibly substantiates their existence prior to the filing date. Finally, Emala asserts that STX acquired their competitors' lacrosse heads through routine commercial purchases.

[4] Paul Kolada ("Kolada"), an expert on the manufacturing of products made by molding plastic, submits that he has inspected the archived lacrosse heads and has failed to detect any modifications and changes to their physical structure.
Warrior does not agree that the twenty-three items in question are indeed "lacrosse heads" because, in its opinion, some are toys, while others have been altered. However, for the purpose of this motion only, it concedes that these specimens are "lacrosse heads."

these lacrosse sticks, pre-date the May 21, 2001 filing date of the "932 Patent" application[5].

Citing Rule 902(7) of the Federal Rules of Evidence,[6] STX submits that the inscriptions on certain lacrosse heads are self-authenticating because they establish the existence of these products at least one year prior to the "932 Patent" filing date. Furthermore, and when utilizing the standard of review that must necessarily accompany an evaluation of a dispositive motion, STX has produced evidence such as proffered testimony, expert testimony, and physical exhibits to support its position that the "932 Patent" was a prior art, which, in turn, creates a genuine issue of a material fact regarding this issue. Therefore, Warrior's motion for partial summary judgment concerning the validity of U.S. Patent No. 6,561,932 must be denied.

IV.

The determination of whether an accused product infringes upon a patent claim is a two-step process. *North American Container, Inc. v. Plastipak Packaging, Inc.,* 415 F.3d 1335, 1344 (Fed. Cir. 2005). The first step involves a judicial determination of the scope and meaning of the asserted patent claims. *Id.* The second step entails the comparison of the accused products to the claims, as construed, and a subsequent determination regarding whether the accused product contains each and every limitation of the claims. *Id.* The Federal Circuit Court of Appeals has declared this second step to be a factual determination. *Research Plastics, Inc. v. Federal Packaging Corp.,* 421F.3d 1290, 1295 (Fed. Cir. 2005). Significantly, all claims are presumed to be valid. 35 U.S.C.

---

[5] STX maintains that Warrior's own lacrosse heads also constitute prior art because its patents seek to claim structures that it placed in the stream of commerce during the time period prior to the filing date of the patents.

[6] "Fed.R.Civ.P.902(7) reads as follows: "[e]xtrinsic evidence of authenticity . . .is not required with respect to . . . [i]nscriptions, signs, tags, or labels purporting to have been affixed in the course of business and indicating ownership, control, or origin."

§ 282 (2006). With recognition of Warrior's position that the STX lacrosse heads infringe upon Claims, 7, 31, and 42, the Court will now examine them seriatim.

A.     Claim 7

According to Warrior, the improved pocket feature of the invention is embodied in all of the claims. Claim 7 of the "932 Patent" describes a particular relationship between the two sidewalls of the frame.[7] Warrior argues that the Bionic, Deuce, Fuse, Liquid, and Profile lacrosse heads infringe upon Claim 7 of the "932 Patent." Warrior contends that all of these lacrosse heads readily satisfy elements (a), (b), and © of Claim 7. Additionally, Warrior asserts that the distance between the upper rims in each of the lacrosse heads is greater than the distance between the lower rims, thereby satisfying element (d) of this Claim. Finally, Warrior contends that element (e) has

---

[7] Claim 7 states that:

A lacrosse head for attachment to a lacrosse handle, comprising:

(a)     an open frame having a rearward arcuate wall, a pair of sidewalls that extend generally forwardly from said rearward arcuate wall, and a scoop that connects said pair of sidewalls opposite said rearward arcuate wall;

(b)     a throat projecting rearwardly from said open frame and having a socket for receipt of the lacrosse handle therein;

(c)     a plurality of net attachment structures associated with said open frame allowing a net to be secured to said open frame;

(d)     each of said pair of sidewalls having a lower rim and an upper rim, and wherein at least one location along said open frame a first distance defined by the distance between said upper rims of said sidewalls is greater than a second distance defined by the distance between said lower rims of said sidewalls;

(e)     wherein said sidewalls define a rear portion and a forward portion and wherein said lower rims of said sidewalls are generally parallel to one another in said rear portion.

8

also been satisfied because the lower rims of the sidewalls in the Bionic, Deuce, Fuse, Liquid, and Profile lacrosse heads are generally parallel to each other in the rear portion (near the throat) of the head.

Warrior points to the measurements that were conducted by Kolada, who determined that STX's Bionic+, Deuce, Fuse, GForce, GForce (overmold), Hype, Profile++, and Surge lacrosse heads do not "flare" outward at any point along the sidewalks.[8] However, STX takes issue with this argument, contending that these lacrosse heads have a geometry of a "reverse flare" which suggests that the distance between the lower rims is actually greater than the corresponding distance between the upper rims. Moreover, STX points out that Kolada's responses to Warrior were given within the context of a fact witness before he had an opportunity to analyze the drawings of the actual heads in this case.

STX counters by stating that Warrior's placement of parallel lines in its exhibits is self-serving and misplaced. Rather, STX maintains that the sidewalls curve away from the centerline of the head, and are, therefore, not generally parallel.

B.  Claim 31

This Claim differs only slightly from Claim 7. Claim 31 relates to the physical relationships between the upper and lower portions of the sidewalls.[9] Warrior contends that the Bionic, Fuse,

---

[8]STX concedes that the original Bionic did have some "flare." However, the head was redesigned and reintroduced as the Bionic+, which, according to STX, no longer contains the "flare."

[9] Claim 31 states as follows:

A lacrosse stick head for attachment to a lacrosse stick, comprising:

(a) a frame element defining an open area for receiving a lacrosse ball including:

9

Liquid, Profile, and Surge lacrosse heads infringe upon Claim 31 of the "932 Patent." Additionally, Warrior asserts that the same evidence, which pertained to the encroachment of the Bionic, Fuse, Liquid, Profile, and Surge lacrosse heads in Claim 7, also supports its charge of an infringement of Claim 31 by STX. Furthermore, Warrior contends the lacrosse heads include sidewalls "generally diverge," which, in turn, satisfy element (d). In addition, Warrior asserts that element (e) is supported by the evidence which demonstrates that the lower portions of the sidewalls, along some point in the rear portion of the head, are closer together than the upper portions of the sidewalls.

C.   Claims 42

The language in Claim 42[10] of the "932 Patent" pertains to a "recessed channel" in the lower

---

(b)   a rear arcuate wall;

(c)   a scoop located opposite said rear arcuate wall; and

(d)   a pair of opposing sidewalls that generally diverge from said arcuate wall to said scoop, said pair of opposing sidewalls each having an inner surface with an upper section and a lower section, said pair of sidewalls each being broadly divisible into a rear portion and a forward portion;

(e)   wherein at least a portion of each of said lower sections in said rear portion are disposed further inwardly than a corresponding portion of said upper sections.


[10] Claim 42 states:

The lacrosse head comprising:

(a)   a base;

(b)   a scoop;

(c)   a throat area extending rearwardly from said base for accommodating a lacrosse handle

10

portion of the sidewall for aiding the retention of the lacrosse ball in the head. Warrior argues that the Bionic, Fuse, Liquid, Gforce and Hype lacrosse heads literally infringe upon Claim 42 of the "932 Patent," which, in turn, supports its view that elements (a), (b), and © have been met. Warrior also submits that these lacrosse heads satisfy the requirements of element (d), noting that a recess formed along a lower edge of the inner side of the sidewall to assist in retaining a lacrosse ball in the head. However, STX asserts that its expert, Gary Gait, analyzed the Bionic lacrosse head and concluded that it did not provide the ball retention benefits as required by the claim construction of the Court. It is his opinion that the slight set back portion of the head is not of sufficient length and depth to assist in the retention of the lacrosse ball in the head.

On the other hand, Kolada**,** following his examination of the Fuse, Gforce, GForce (overmold), Hype, and Liquid lacrosse heads, concluded that there was no recessed channel in the sidewall. Accordingly, STX contends that the Fuse, GForce, GForce (overmold), Hype, and the Liquid do not infringe upon claim 42 of the "932 Patent."

When comparing the accused products to Claims 7, 31, and 42, both parties have submitted contradictory evidence in order to support their respective arguments. Additionally, Warrior has neither provided literal measurements from the actual lacrosse heads nor explained how the locations shown in its Claim charts were selected. Specifically, Warrior has not provided any dimensions in order to establish that the lower rims are indeed "generally parallel to one another." Therefore, a genuine issue of a material fact exists in this cause. As a consequence, Warrior's

---

therein; and

(d)    a pair of spaced apart sidewalls extending between said scoop and base defining a ball receiving area, at least one of said pair of sidewalls having a recessed channel formed in a lower portion of an inner side thereof to assist in retaining a lacrosse ball therein.

11

motion for summary judgment of infringement of the "932 Patent" must be rejected.

V.

For the reasons that are stated above, Warrior's (1) motion for partial summary judgment concerning the validity of U.S. Patent No. 6,561,932 and (2) motion for summary judgment of infringement of U.S. Patent No. 6,561,932 must be, and are, denied.

IT IS SO ORDERED.


Dated : May 22, 2006                                   s/ Julian Abele Cook, Jr.
          Detroit, Michigan                            JULIAN ABELE COOK, JR.
                                                       United States District Court Judge



Certificate of Service

I hereby certify that on May 22, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                                       s/ Kay Alford
                                                       Courtroom Deputy Clerk