UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WARRIOR LACROSSE, INC.,
A Michigan Corporation,

        Plaintiff,

                                              Case Nos. 04-70363 & 04-71842
v.                                            Honorable Julian Abele Cook, Jr.

STX, L.L.C., a Maryland Limited
Liability Company,

        Defendant.

## ORDER

The present controversy arises from the charges by the Plaintiff, Warrior Lacrosse, Inc. ("Warrior"), that the Defendant, STX, L.L.C ("LLC"), infringed upon U.S. Patent No. 6,561,932 ("932 patent") and U.S. Patent No. RE 38, 216 ("216 Patent"). In essence, Warrior complains that STX manufactures and sells lacrosse heads with trade designations which illegally incorporate many of the features on its commercial products.[1] As a consequence of these alleged encroachments upon its property interests, Warrior has filed a motion for summary judgment in which it submits that there are no genuine issues of a material fact to be resolved. In essence, Warrior submits that this motion turns on the construction and application of the phrase, "defining a plane" or "which defines a plane. For the reasons that have been set forth below, Warrior's application for dispositive relief must be denied.

---

[1] Warrior has identified the following STX lacrosse heads that, in its opinion, have infringed upon Claims 58, 85, 98, and 100 of its "216 Patent:" AV8, Backlash, Bionic, Deuce, Factor, Fuse, GForce, Hype, Level, Liquid, Profile, Proton, Powerplay, Surge, Whiplash, and X2.

I.

According to Warrior, the upper and lower rims of the sidewalls of the typical lacrosse heads were straight or flat prior to 1995, in that they remained in substantially the same plane from the base to the scoop. These were known as "straight-wall" or "flat" lacrosse heads.

A.  216 Patent

Most lacrosse sticks include a handle and a head. However, this litigation only involves a dispute over the head portion of the lacrosse stick. Most lacrosse heads are made by plastic injection molding and consist of a single structure; namely, a socket and a frame. The socket is designed to receive the lacrosse handle, whereas the frame includes a base, a pair of sidewalls, and a scoop. The base consists of a curved surface that contacts a lacrosse ball while it is in the head. The pair of sidewalls connect at one end to the base and at the other end to the scoop. The scoop connects the sidewalls opposite the base and assists in scooping balls off the ground. The frame also includes string holes for attachment of a net to catch and throw a lacrosse ball.

The 216 Patent, which was issued on August 12, 2003, is entitled the "Scooped Lacrosse Head." According to Warrior, this patent generally relates to a curved or "offset" lacrosse head for mounting on a handle. The sidewalls curve downward toward the head/handle axis to impart a curved geometry when viewed from the side. This offset feature provides leverage when a player throws a ball.

The 216 Patent includes eleven independent claims, with a total of one hundred and one claims. Independent claims 58 and 95 use the phrase, "defining a plane," while claims 85 and 100 use the phrase, "which defines a plane." In its order of June 2, 2005, the Court construed these terms to mean "distinctly specifying a plane."

II.

The Supreme Court has opined that "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). At the same time, the language within Rule 56© provides that a motion for summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Here, the burden is on the movant to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56©; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). It is not the role of the Court to weigh the facts. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). Rather, it is the duty of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, the moving party can show that a genuine factual issue is lacking if it presents evidence which is sufficient to make the issue "so one-sided that [it] must prevail as a matter of law," *id.* at 252, or point to a failure by the non-moving party to present evidence "sufficient to establish the existence of an element essential to

its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Upon such a showing, it is incumbent upon the non-moving party to act affirmatively to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e). The production of a mere scintilla of supporting evidence is insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Indeed, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

### III.

The determination of whether an accused product infringes a patent claim necessarily incorporates a two-step process. *North American Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1344 (Fed. Cir. 2005). The first step involves a determination by the Court of the scope and meaning of the asserted patent claims. *Id.* The second step entails a comparison of the accused products to the claims, as construed, and a subsequent determination regarding whether the accused product contains each and every limitation of the claims. *Id.* The second step is a factual determination. *Research Plastics, Inc. v. Federal Packaging Corp.,* 421F.3d 1290, 1295 (Fed. Cir. 2005). As a general proposition, all claims are presumed to be valid. 35 U.S.C. § 282 (2006).

Typically, words of a claim are given their ordinary and customary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). The ordinary and customary meaning of a claim is the same as it would have to a person of "ordinary skill in the art in question at the time of the invention, i.e., as of the effective date of the filing of the application." *Id.* In providing a definition for the term, "defining a plane" during its *Markman* hearing, the Court

determined that STX's suggested application of "define," which meant "distinctly specifying," provided an acceptable ordinary meaning of the word.

In *Phillips,* the court determined that "the methodology [*Texas Digital*][2] adopted placed too much reliance on extrinsic sources such as dictionaries, treatises, and encyclopedias, and too little on intrinsic sources, in particular the specification and prosecution history." *Id.* at 1320. However, the court emphasized that dictionaries could play a useful role in claim construction. *Id.* at 1322-23. Nevertheless, the *Phillips* court opined that dictionary definitions should not be used to broaden the meaning of claims. *Id.* at 1321.

In its pleadings, Warrior submits that these claims do not "distinctly specify" a plane which, when viewed from the side, appears as demonstrated in the 216 Patent. Furthermore, Warrior proclaims that the specification in the 216 Patent[3] necessarily dictates that "defining a plane" must mean that "when viewing the lacrosse head from the side, a reference plane [is] disposed at the front side edge of the frame [and] is parallel to the handle/head axis." Warrior's

---

[2] This Court did not find anything in the specification of the 216 Patent that contradicted the dictionary definition of the word, as supported by *Texas Digital Sys., Inc. v. Telegenix, Inc.,* 309 F.3d 1193, 1209 (Fed. Cir. 2002).

[3] Part of the 216 Patent states as follows:

"The font side edge 46 of that portion of base 28 immediately adjacent to socket 40 defines a plane 48 that is offset from but parallel to handle/head axis 42.  As noted above, lacrosse handle of conventional construction typically have all or a major portion of frame front side edge 46 disposed in plane 4.  However, contrary to such conventional constructions, head 22 of the present invention incorporates both a front side edge 46 and a back side edge 50 that curve between base 28 and lip 36 first away from plane 48 in the direction of back side edge 50, and then back toward plane 48.  Front side edge 46 crosses plane 48 at 56, and then reverses curvature toward lip 36...After front side edge 46 crosses plane 48 at about point 56, front side edge 46 has a reverse radius of curvature 58 of about 5.05 inches.  From about such crossing of front side edge 46 of plane 48 at point 56, thickness of sidewalk 32, 34 decreases uniformly to a minimum thickness at lip 36."

Mot. Summ. J. at 13. Otherwise, it is Warrior's contention that both sidewalls cannot be "lowered," "curved downward," "offset," or "extending downward" with respect to the reference plane as the claims require. Moreover, Warrior argues that when viewed from any other angle, one could not determine whether both sidewalls curve downward. Finally, Warrior urges the Court to modify its construction of "distinctly specifying a plane" by construing it to mean "when viewing the lacrosse head from the side, a reference plane disposed at the front side edge of the frame that is parallel to the handle/head axis."

STX takes issue with this approach, asserting that Warrior's approach should be rejected for a variety of reasons; namely, (1) the construction of the challenged terms by the Court accurately explained their ordinary and customary meaning in its *Markman* order; (2) the Court neither contradicted nor deviated from the ordinary meaning of the terms; (3) *Phillips* permitted courts to consult dictionaries when construing claim terms, notwithstanding Warrior's contentions to the contrary; (4) the construction of "defining a plane" by the Court is supported by the patent specification; (5) the 216 Patent specification does not mention an imaginary reference plane, as advanced by Warrior in its pleading; and (6) Warrior has ignored the explicit claim language which requires the front edge of the frame at the base to have a specific geometrical structure that is capable of defining a plane.

During the *Markman* hearing, the Court applied the ordinary and customary meaning to all of the challenged terms. Contrary to the position that has been advanced by Warrior, it is entirely acceptable for the Court to use a dictionary when attempting to reach a conclusion involving claim construction. Moreover, it appears that Warrior is attempting to reiterate the same argument that was advanced to the Court during the *Markman* hearing. Consequently, the

Court does not find any error in its determination of the meaning of the terms. Thus, Warrior's proposed claim construction must be rejected because, in the opinion of the Court, an accurate and proper claim construction already exists, thereby obviating the need for a substitute claim construction.

IV.

Paul Kolada ("Kolada"), an expert on the manufacturing of products made by molding plastic, identified the reference planes in each of the accused lacrosse heads. The reference plane and the handle/head axis were labeled by him as "A" and "B," respectively. According to Kolada, line "A" represented an "extension line from the highest point of the stick" that occurs "in the throat area or stop area" and which is generally parallel to the center line. Reference line "B" was the "center line of the socket which represen[ted] the center line of the handle." Reference plane A starts from an upper surface of the socket or base and extends parallel to reference line B. Reference lines A and B correspond, respectively, with the throat or socket area of the head "which defines a plane," and the handle/head axis as claimed in each of the 216 patent claims. However, STX contends that Kolada's opinion should be discounted because it does not pertain to the language of the claims which requires the structure of the front side of the frame to "define" or "distinctly specify a plane."

The use of imaginary reference lines is not relevant to this controversy because the claim language requires the structure of the front side of the frame to "define" or "distinctly specify a plane." Inasmuch the Court has not been made aware of any questioning of Kolada about the structural features of the frame or the socket, it appears that his testimony was taken out of context in this matter. Moreover, it is evident that the upper surfaces of the round or

curved sockets or projections of the lacrosse head are flat. Accordingly, Kolada's view point is not relevant, in that the imaginary reference lines do not provide a valid basis for Warrior's conclusions and, hence, it must be rejected.

V.

A.    Claim 58

Claim 58[4] of the "216 Patent" describes the sidewalls as "curving generally downward" below the reference plane. Warrior contends that this Claim requires that the offset feature be evident "when viewed in side elevation." Moreover, it is Warrior's contention that Claim 58 defines the reference plane on the front side of the frame at the base which corresponds with the uppermost portion of the head, when viewed from the side, in the region of the base or throat.

B.    Claim 85

Claim 85[5] of the 216 Patent describes the sidewalls as "curving downwardly" below the

---

[4] Claim 58 states the following:

A lacrosse head, comprising:

(a)    an open frame having a base with a concave interior surface defining a ball rest, a pair of sidewalls diverging from said base and a lip interconnecting said sidewalls remotely of said base;
(b)    means carried by said frame for securing a lacrosse net along a back of said frame leaving an opposing front side of said frame open for receiving lacrosse balls;
(c)    a projection extending exteriorly from said base for attachment of a handle so as to define a handle/head axis, said front side of said frame at said base adjacent to said attachment means defining a plane parallel to said axis;
(d)    said front side of said sidewalls curving generally downwardly to a point below said plane beginning adjacent said base so as to impart a curved geometry when viewed in side elevation.

[5] Claim 85 states the following:

A head for a lacrosse stick, comprising:

8

reference plane as defined by an upper surface of the socket. Warrior maintains that, similar to Claim 58, this claim also requires the offset feature to be apparent when "viewed in side elevation." Warrior submits that the reference claim is defined by the upper surface of the socket.

C.   Claim 98

Claim 98[6] of the 216 Patent is similar to the two previously identified claims. The reference plane in Claim 98 is defined by a top edge of the base adjacent to the socket. Warrior contends that reference line A, which identifies each accused head, represents the claimed reference plane when viewed from the side and extends parallel to the handle/head axis.

---

(a)   an open frame having a base with a concave interior surface defining a ball rest, a pair of sidewalls extending from said base, and a lip interconnecting said sidewalls remotely of said base;
(b)   a plurality of apertures carried by said frame for securing a lacrosse net along a back side of said frame, leaving the front side of said frame open for receiving a lacrosse ball;
©   a socket extending from said base for attachment of a handle so as to define a handle/head axis, said socket having an upper surface defining a plane parallel to said handle/head axis;
(d)   said front side of said sidewalls, beginning adjacent said base, curving downwardly to a point below said plane so as to impart a curved geometry when viewed in side elevation.

[6] Claim 98 states the following:

A lacrosse head comprising:

(a)   an open frame having a base with a concave interior surface defining a ball rest;
(b)   a pair of sidewalls diverging from said base and a lip interconnecting said sidewalls remotely of said base;
©   a plurality of apertures carried by said frame for securing a lacrosse net along a bottom side of said frame, leaving a top side of said frame open for receiving a lacrosse ball;
(d)   a socket exteriorly projecting from said base for attachment of a handle so as to define a handle/head axis, said base having a top edge adjacent said socket for defining a plane parallel to said handle/head axis; and
(e)   said front side of sidewalls curving generally downwardly to a point below said plane, said curving beginning adjacent said base.

9

D.      Claim 100

Warrior contends that Claim 100[7] differs from the other claims in subtle ways, in that it requires the offset feature to be evident when "viewed in side elevation."[8] Warrior expresses the belief that this requirement further supports its contention that such a side view is the only reasonable orientation of the reference plane, and the only conclusion that one could reach after reading the patent specification, drawings, and claims. In the present case, the reference place is defined by the upper surface of the socket. Warrior argues that this corresponds to reference line A which was identified for each accused head by Kolada. Consequently, Warrior concludes that all of the accused lacrosse heads infringe upon Claim 100 of the 216 Patent claim.

VI.

---

[7] Claim 100 states the following:

100.    A head for a lacrosse stick, comprising:

(a)     an open frame having a base with a concave interior surface defining a rest;
(b)     a pair of sidewalls extending from said base, and a lip interconnecting said sidewalls remotely of said base;
©       a plurality of apertures carried by said frame for securing a lacrosse net along a back side of said frame, leaving the front side of the frame open for receiving a lacrosse ball; and
(d)     a projection extending from said base for attachment of a handle so as to define a handle/head axis, said projection having an upper surface which defines a plane parallel to said handle/head axis;
(e)     said front side of each of said sidewalls extending downward beginning adjacent said base to point below said plane.

[8] Significantly, the description of Claim 100 that Warrior inserted in its brief is different from the actual description of this claim, as identified in its exhibits. As an example, Part E in Warrior's version of Claim 100 states, "said front side of said sidewalls, beginning adjacent said base, curving downwardly to a point below said plane so as to impart a curved geometry when viewed in side elevation." The actual description does not contain the requirement that the offset feature be "viewed in side elevation." Consequently, this portion of Warrior's argument fails.

STX contends that the challenged diagrams should be treated as being invalid for the purpose of this controversy because they are based upon a faulty claim construction which has been advanced by Warrior. Furthermore, STX contends that the side and top views, as depicted in the claim diagrams, are inadequate because neither of them demonstrate whether the front side of the frame at the base or the upper surface of the socket or projection "defines" or "distinctly specifies a plane." In essence, it is STX's position that (1) virtually all the front sides of the frames of STX's accused heads fail to define a unique plane; (2) most of the planes of the lacrosse heads for which the front sides of the frame define multiple planes or a continuum of planes are not parallel to the handle/head axis; (3) many of the sockets or projections in the accused lacrosse heads are round, oval or curved in such a manner that their upper surfaces cannot define any planes; and (4) even if the socket or projection could be found to define a plane, most of the planes of the lacrosse heads intersect with the handle/head axis.

Warrior, in its pursuit of this dispositive motion, has utilized its own proposed claim construction to advance its infringement arguments rather than the one that has been determined by this Court. Inasmuch as Warrior has failed to analyze the claims that utilized the definition provided by the Court, its allegations concerning possible infringement must be discounted.

VII.

The claim language suggests that the front side of the frame must include a structure that defines or distinctly specifies a plane ("said front side of said frame...defining a plane parallel to said axis"). There appears to be an explicit limitation on the structure of the frame; namely, that the frame may not have any shape. The structure must have such a shape that the front side of

11

the frame at the base defines a plane.[9] To summarize, the patent specification initially describes the shape of the front side edge of the frame at the base. As such, "it should be framed [so] that the front side of the frame defines a plane"and then requires that "the plane that is so "defined" be parallel to the handle/head axis."

Essentially, lacrosse heads with frames, projections, or sockets that do not have a structure which "defines" or "distinctly specifies" a plane do not fall within the limitations of the claims.  In the specification, the words "define" or "defining" are not used to relate to any imaginary or reference planes.  Instead, the terms are used in relation to geometries formed and distinctly specified by the structure of the head itself.  Consequently, the claim construction of the Court is supported by the patent specification.

## VIII.

STX argues that Warrior's present motion is essentially a motion for reconsideration which should have filed not later than ten days after the date when the original claim construction order was issued; namely, June 12, 2005.[10]  STX asserts that Warrior's allegations must fail because (1) *Phillips* was decided on July 12, 2005, and (2) this dispositive motion was not filed with the Court until October 12, 2005.

Despite Warrior's argument, the Court agrees with STX, in that this summary judgment

---

[9] The "216 Patent" specification, col. 1, lines 60-65 states the following:

"A lacrosse head in accordance with a first aspect feature of the present invention comprises an open frame construction...in which the front side of the frame at the base...defines a base plane parallel to the handle/head."

[10] Motions for reconsideration in this District are governed by E.D. Mich. LR 7.1(g)(1), which reads in its entirety as follows: "A motion for rehearing or reconsideration must be filed within 10 days after entry of the judgment or order."

12

motion is essentially a motion for reconsideration. Although Warrior had an ample amount of time in which to bring the *Phillips* case to the attention of the Court, and to seek a revision of the claim construction, it failed to do so in a timely manner. Moreover, Warrior's submission of a substitute claim construction is similar to the one that it proffered to the Court during the *Markman* hearing. Furthermore, Warrior's analysis of a possible infringement of the 216 Patent is based upon its own proposed claim construction, and not that determined by the Court. As a consequence and when adopting the traditional standards that are associated with evaluations of dispositive motions, the Court concludes that there are genuine issues of a material fact which must be resolved by the jury. Thus, when utilizing these traditional standards of evaluations, it is clear to the Court that Warrior has failed to present any evidence that would justify the entry of a summary judgment in its favor on this narrow issue.

IX.

For the reasons that are stated above, Warrior's motion for summary judgment relating to the infringement of U.S. Patent No. Re 38, 216 must be, and is, denied.


IT IS SO ORDERED


Dated:  June 12, 2006           s/ Julian Abele Cook, Jr.
       Detroit, Michigan            JULIAN ABELE COOK, JR.
                                    United States District Court Judge

<u>Certificate of Service</u>

I hereby certify that on June 12, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

<u>s/ Kay Alford</u><br>
Courtroom Deputy Clerk